No. 24-10564

# United States Court of Appeals
### *for the*
# Eleventh Circuit

―――――――――◆―――――――――

HI-TECH PHARMACEUTICALS, INC.,

*Plaintiff-Counter Defendant-Appellant,*

– v. –

NUTRITION RESOURCE SERVICES, INC., d.b.a. JBN - Just Be Natural,

*Defendant-Counter Claimant-Appellee.*

―――――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA IN CASE NO. 1:23-CV-05536-TCB
HONORABLE TIMOTHY C. BATTEN, CHIEF U.S. DISTRICT JUDGE

## REPLY BRIEF FOR PLAINTIFF-COUNTER DEFENDANT-APPELLANT

GREGORY HILLYER
HILLYER LEGAL, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, DC 20015
(202) 686-2884

*Attorneys for Plaintiff-Counter
Defendant-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (3331268)

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMANT

Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2 and 26.1-3, Appellant Hi-Tech Pharmaceuticals, Inc. hereby provides the following amended corporate disclosure statement and certificate of interested persons:

### A. CORPORATE DISCLOSURE STATEMENT

There is no parent corporation.

### B. CERTIFICATE OF INTERESTED PERSONS

- Batten, Sr., Timothy C., District Court Judge

- Hillyer Legal, PLLC, Counsel for Hi-Tech Pharmaceuticals, Inc.

- Hillyer, Gregory L, Counsel for Hi-Tech Pharmaceuticals, Inc.

- Law Office of Arthur W. Leach, Counsel for Hi-Tech Pharmaceuticals, Inc.

- Leach, Arthur W., Counsel for Hi-Tech Pharmaceuticals, Inc.

- Leach, Jessica, Counsel for Hi-Tech Pharmaceuticals, Inc.

- Sullivan, Nicholas, Counsel for Hi-Tech Pharmaceuticals, Inc.

- Jack Wenick, Counsel for Hi-Tech Pharmaceuticals, Inc.

- Wheat, Jared, Principal

*/s/ Gregory L. Hillyer*
Gregory L. Hillyer

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMANT...............................................................................C-1

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT ........................................................................................................1

I.    THE PRELIMINARY INJUNCTION SHOULD NOT HAVE
      ISSUED ......................................................................................................1

      A.    JBN's Arguments Regarding DMHA Are Inaccurate And
            Irrelevant ..........................................................................................1

      B.    The Lack Actual Confusion And The USPTO's Approval of
            Hi-Tech's KRANK3D Mark Weigh Against A Preliminary
            Injunction..........................................................................................4

      C.    The USPTO's Initial Approval Of KRANK3D Is Significant ............5

      D.    JBN Has Not Shown Irreparable Harm................................................5

      E.    JBN Restates The Record And Makes Irrelevant Arguments ...........11

II.   JBN MISCONSTRUES THE SECURITY REQUIREMENT
      IMPOSED BY FEDERAL RULE OF CIVIL PROCEDURE 65(C) ...........12

      A.    JBN's Likelihood of Success on the Merits is Irrelevant...................12

      B.    JBN Is Incorrect that Failure to Request Bond is, Alone, a
            Sufficient Basis for Waiving Rule 65(c)'s Bond Requirement..........14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Agape Hospice Care, Inc. v. Hospice Care of Georgia, LLC*,
    2022 WL 18777532 (N.D. Ga. Nov. 2, 2022)............................................8, 9

*All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*,
    887 F.2d 1535 (11th Cir. 1989) ................................................... 5-6

*BellSouth Advert. & Publ'g Corp. v. Real Color Pages, Inc.*,
    792 F. Supp. 775 (M.D. Fla. 1991) ...........................................8, 9

*Biotics Rsch. Corp. v. Heckler*,
    710 F.2d 1375 (9th Cir. 1983) ...................................................3

*Bring It Om, LLC v. Bring It Om Power Yoga, LLC*,
    No. 1:19-CV-2868-TCB, 2019 WL 9633213
    (N.D. Ga. Sept. 25, 2019) .........................................................16

*Carvel Franchisor SPV LLC v. Chou*,
    No. 1:19-cv-02194- WMR, 2019 WL 4751866 (N.D. Ga. 2019)........... 12-13

*Conagra, Inc. v. Singleton*,
    743 F.2d 1508 (11th Cir. 1984) ......................................................4

*Dietary Supplemental Coalition, Inc. v. Sullivan*,
    978 F.2d 560 (9th Cir. 1992) .................................................... 3-4

*Eastman Kodak Co. v. Collins Ink Corp.*,
    821 F. Supp. 2d 582 (W.D.N.Y. 2011).........................................13

*Express Franchise Services, L.P. v. Impact Outsourcing Solutions, Inc.*,
    244 F. Supp. 3d 1368, (N.D. Ga. 2017).........................................8

*Fla. Int'l Univ. Board of Trustees v. Fla. National Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ...................................................12

*Frehling Ent., Inc. v. Int'l Select Group, Inc.*,
    192 F.3d 1330 (11th Cir. 1999) ....................................................4

*Ga. Television Co. v. TV News Clips of Atlanta, Inc.*,
    718 F. Supp. 939 (N.D. Ga. 1989)..............................................8, 9

*Hi-Tech Pharms., Inc. v. Hahn*,
    No. 19-cv-1268, 2020 WL 3498588 (D.D.C. June 29, 2020).......................2

*HOA Franchising, LLC v. MS Foods, LLC*,
    No. 1:23-CV-04096-ELR, 2023 WL 9692401 (N.D. Ga. Dec. 20 ..............14

*Holistic Candlers and Co Ass'n v. FDA*,
    664 F.3d 940 (D.C. Cir. 2012).........................................................................3

*International Fidelity Insurance Company v. Talbot Construction, Inc.*,
    No. 1:15-CV-3969-LMM, 2016 WL 8814367 (N.D. Ga. Apr. 13,
    2016) ..............................................................................................................16

*Larweth v. Magellan Health, Inc.*,
    841 F. App'x 146 (11th Cir. 2021).............................................................8, 9

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v.
    City of Jacksonville*,
    896 F.2d 1283 (11th Cir. 1990) .....................................................................5

*Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*,
    2021 WL 5027800 (N.D.Ga. May 28, 2021) .............................................8, 9

*Rosas v. Hi-Tech Pharms.*,
    Case No. 20-cv-433, 2020 WL 5361878 (C.D. Cal. July 29, 2020) ..............3

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
    188 F. Supp. 2d 1350 (S.D. Fla. 2002).......................................................6, 7

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) .....................................................................5

*Sisterson Women of Color Reproductive Justice Collective v. Kemp*,
    410 F. Supp. 3d 1327 (N.D. Ga. 2019)................................................... 14, 15

*Superior Consulting Services, Inc. v. Shaklee Corp.*,
    710 F. App'x 850 (11th Cir. 2017)................................................................4

*TracFone Wireless, Inc. v. Washington*,
    978 F. Supp. 2d 1225 (M.D. Fla. 2013) ......................................................13

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ..............................5

*University Books and Videos, Inc. v. Metropolitan Dade County*,
    33 F. Supp. 2d 1364 (S.D. Fla. 1999).........................................................13

*Vineyard Vines, LLC v. Outlet Tent Sales, LLC*,
    No. 3:19-CV-0036-TCB, 2019 WL 8277260
    (N.D. Ga. Sept. 10, 2019) .............................................................................16

*Wreal LLC v. Amazon.com, Inc.,*
    2015 WL 12550932 (S.D. Fla. Feb. 3, 2015), *report and
    recommendation adopted*, 2015 WL 12550912 (S.D. Fla. Aug. 31,
    2015) ........................................................................................................ 6-7

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) ....................................................................5

## Statutes & Other Authorities:

21 U.S.C. § 321(ff)(1) ....................................................................................2

21 U.S.C. § 342(f)(1) ......................................................................................2

21 U.S.C. § 342(f)(2) ......................................................................................2

Fed. R. Civ. P. 65(c).................................................................... 13, 14, 15, 16

FDA, *DMHA in Dietary Supplements* (Mar. 6, 2023) ...............................1

iv

## ARGUMENT

## I.    THE PRELIMINARY INJUNCTION SHOULD NOT HAVE ISSUED

### A. JBN's Arguments Regarding DMHA Are Inaccurate And Irrelevant

Throughout the Brief of Appellee ("BA"), several erroneous positions regarding DHMA are advanced. According to JBN, because DMHA is allegedly unlawful, unsafe and its inclusion in dietary supplement products renders them "adulterated," the KRANK'D Mark is somehow stronger, JBN is suffering irreparable harm that is "more acute," the balance of the hardship "tips in JBN's favor" and banning Hi-Tech's products is in the interest of the public. BA at Pgs. 12-52.

JBN's entire premise—and therefore all of its conclusions—are misplaced because DMHA is **_not_** unlawful. In fact, products containing DMHA are available for purchase throughout the United States today, including on Amazon. Only The United States Food and Drug Administration ("FDA") has the authority to ban DMHA, not JBN's lawyers. The FDA, however, has never done so. At most, the FDA published a statement on its website that it has "concluded that DMHA is an unsafe food additive" and that it "considers dietary supplements containing DMHA to be adulterated." FDA, _DMHA in Dietary Supplements_ (Mar. 6, 2023), https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/dmha-dietary-supplements. Despite this, it is undisputed that the

FDA has not taken the regulatory steps required to declare DMHA illegal. *See* 21 U.S.C. § 342(f)(1)-(2). Unless and until the FDA takes final agency action declaring DMHA "unlawful," JBN's arguments regarding DMHA and the district court's consideration of those arguments are unsupported and unconvincing.

Although JBN relies heavily on a Warning Letter sent to Hi-Tech from FDA in April 2019, JBN concedes that the letter did not name *any of the products at issue in this case* much less express that Hi-Tech's KRANK3D products are "adulterated." The FDA merely sent Hi-Tech a letter asking whether it had a basis to conclude that DMHA in unrelated products is a lawful dietary ingredient under 21 U.S.C. § 321(ff)(1). Doc 5-10. On May 1, 2019, Hi-Tech responded and provided an expert report in support of its position that DMHA was safe. Hi-Tech never received a response from the FDA. This hardly constitutes "specific formal action against Hi-Tech" and JBN provides no such evidence. BA at Pg. 13.

Hi-Tech also sued the FDA in the District of Columbia challenging the agency's *de facto* attempt to ban DMHA without engaging in the proper administrative rule making process. *See Hi-Tech Pharms., Inc. v. Hahn*, No. 19-cv-1268, 2020 WL 3498588 (D.D.C. June 29, 2020) (the "DC Action"). The FDA moved to dismiss the DC Action for lack of subject matter jurisdiction on the basis that Hi-Tech's claims were unripe. *Id*. The district court agreed that Hi-Tech lacked standing and dismissed the case because the FDA ***had not*** taken any formal

enforcement action against Hi-Tech with respect to its DMHA-containing products and the DMHA Warning Letter did not constitute "final agency action," thereby implicitly finding that statements posted to the FDA's webpage are insufficient to transform advisory letters into final agency action. *Id* at *4-*6 (the DMHA Warning Letter "do[es] not represent final agency action subject to judicial review," and did not affect Hi-Tech's "rights or obligations" or impose "legal consequences") (citing, *inter alia*, *Holistic Candlers and Co Ass'n v. FDA*, 664 F.3d 940, 944-45 (D.C. Cir. 2012)).

One month after the DC Action was dismissed, a California district court dismissed the plaintiffs' claims in a putative class action on primary jurisdiction grounds. *Rosas v. Hi-Tech Pharms.*, Case No. 20-cv-433, 2020 WL 5361878 (C.D. Cal. July 29, 2020). Consistent with the ruling of court in the DC Action, the court in *Rosas* held that the DMHA Warning Letter was not final agency action, noting that "Plaintiffs' use of warning letters to demonstrate a final rule or final agency action is unavailing." *Id.* at *3. The *Rosas* court further held that, when facing the issue of the "[c]lassification of a product or ingredient as either a drug, biological product, or food," agency expertise is required, and "[i]n such cases, a district court should decline to review 'anything less than a final administrative determination on the classification of the product.'" *Id.* at *4 (quoting *Biotics Rsch. Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir. 1983); *Dietary Supplemental Coalition, Inc. v.*

3

*Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992)). Based on the foregoing, to the extent the district court's ruling is based on the inclusion of DMHA in KRANK3D products, the ruling is erroneous.

### B. The Lack Actual Confusion And The USPTO's Approval of Hi-Tech's KRANK3D Mark Weigh Against A Preliminary Injunction

It is axiomatic that "the most persuasive factor on likely confusion is proof of actual confusion." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984); *see also Frehling Ent., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999) (The best evidence of a likelihood of confusion in the trademark context is actual confusion.). The presence or absence of actual confusion is, therefore, "given the greatest weight in this analysis." *Superior Consulting Services, Inc. v. Shaklee Corp.*, 710 Fed.Appx. 850, 859 (11th Cir. 2017).

Tellingly, JBN now reverses course on its stance on this issue. BA at Pg. 33. Previously, JBN correctly stated that the most persuasive factor respecting likelihood of confusion is proof of actual confusion. Doc 7-1 - Pg 14 (citing *Conagra v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984)). Now, because it completely lacks any examples of actual confusion, JBN alleges that actual confusion is not a prerequisite of likelihood of confusion. BA at Pg. 33. Regardless of JBN's contrary positions, this factor weight against the finding of a likelihood of confusion.

**C. The USPTO's Initial Approval Of KRANK3D Is Significant**

JBN alleges that Hi-Tech took the position that the USPTO made a "final determination regarding Hi-Tech's application." BA at Pg. 36. Hi-Tech has made no such claim. Rather, Hi-Tech asserted that the examiner conducted a search for marks similar to KRANK3D when considering the KRANK3D application. The fact that this search did not yield KRANK'D, and the application was allowed over other marks that were identified, should be given weight.

**D. JBN Has Not Shown Irreparable Harm**

JBN alleges that because the district court ruled that a likelihood of confusion existed, irreparable harm must also exist. BA at Pg. 37. However, a preliminary injunction requires showing "imminent" irreparable harm. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176-77 (11th Cir. 2000) (*en banc*); (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Thus, JBN's delay in seeking a preliminary injunction for over six months "militates against a finding of irreparable harm." *Id*.

Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits. *Id*. (emphasis in original) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *All Care Nursing Serv., Inc.*

5

*v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1539 (11th Cir. 1989). No amount of restating the district court's order can negate the fact that JBN egregiously delayed in filing its Motion. The Motion unequivocally states that "JBN first learned of the existence of Hi-Tech's application, and of Hi-Tech's use of the Infringing Mark in connection with its 'KRANK3D' products, in or around late ***July of 2023***." Doc 7-1 - Pg 8. JBN then "sent Hi-Tech a cease-and-desist letter on or around ***August 8, 2023***." *Id.* (citing Doc 7-3 Pg 7 and Doc 7-3 – Pgs 46-49) (emphasis added). Yet, JBN did not file its Motion until well over six months later, on ***February 2, 2024***. Doc 7.

JBN baldly states that its actions leading up to its Motion were not "in any way unreasonable," and for this reason, JBN's delay "does not undermine the irreparable harm." BA at Pg. 39. JBN provides a lengthy narrative to explain what took place between JBN learning of Hi-Tech's application for (and use of) the KRANK3D mark and its filing of it Motion. BA at Pgs. 38-40. This narrative should be ignored because reasonableness of the actions during the relevant period is not the applicable standard. *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355-56 (S.D. Fla. 2002). In fact, in *Seiko*, despite the district court giving the plaintiff "credit for attempting to reach a settlement without litigation," it could not see past the "*three-month delay* between Plaintiff's last communication with Defendants and commencement of this suit." *Wreal LLC v.*

*Amazon.com, Inc.,* 2015 WL 12550932, at *17 (S.D. Fla. Feb. 3, 2015), report and recommendation adopted, 2015 WL 12550912 (S.D. Fla. Aug. 31, 2015) (citing *Seiko* at 1355-56).

JBN also parrots the order when declaring that the Eleventh Circuit in *Wreal* did not impose some specific time limitation on parties moving for a preliminary injunction, it merely "held that the district court [there] did not abuse its discretion when it found that a party's five-month delay in seeking a preliminary injunction demonstrated that it was not suffering imminent irreparable harm." BA at Pg. 55. (citing Doc 19 - Pg 19). However, this argument, as previously addressed in Hi-Tech's Motion, does not take into consideration the findings in the district court decision in *Wreal*. Doc 22 - Pgs 7-8. JBN again quotes the Order in an attempt to demonstrate that the district court considered JBN's actions from JBN's learning of Hi-Tech's mark. BA at Pg. 55 (citing Doc 19 - Pg 19). Merely stating the history of the action does not negate the fact that the Court determined that the "correct starting point should be the filing of the action." Doc 19 - Pg 19.

JBN cites other cases that are simply inapplicable to these circumstances. BA, Pgs. 41-43. None of the cited authority involved the current situation where the party seeking an injunction (1) engaged in inaction over approximately a six month period; (2) has not demonstrated any actual harm, much less irreparable harm; (3) failed to negotiate on the cause of the alleged harm; (4) was content to

7

seek cancellation of the accused trademark in the USPTO in the absence of an injunction; (5) only sought injunctive relief after the accused infringer instituted this action and may never have done so otherwise; and (6) failed to negotiate on the cause of the alleged harm.

Because Hi-Tech, not JBN, filed the complaint, it can be assumed that JBN may have never sought injunctive relief at all, or would have at least done so later if Hi-Tech filed the complaint later. BA at Pg. 41-43 (citing *Agape Hospice Care, Inc. v. Hospice Care of Georgia, LLC*, 2022 WL 18777532, *10 (N.D. Ga. Nov. 2, 2022) (preliminary injunction sought by plaintiff); *Larweth v. Magellan Health, Inc.*, 841 F. App'x 146, 158 (11th Cir. 2021) (preliminary injunction sought by plaintiff); *Express Franchise Services, L.P. v. Impact Outsourcing Solutions, Inc.*, 244 F.Supp.3d 1368, (N.D. Ga. 2017) (preliminary injunction sought by plaintiff); *Ga. Television Co. v. TV News Clips of Atlanta, Inc.*, 718 F.Supp. 939, 949 (N.D. Ga. 1989) (preliminary injunction sought by plaintiff); *BellSouth Advert. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F.Supp. 775, 785 (M.D. Fla. 1991) (preliminary injunction sought by plaintiff); *Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*, 2021 WL 5027800, *14 (N.D.Ga. May 28, 2021) (preliminary injunction sought by plaintiff).

In the only Eleventh Circuit authority cited by JBN is distinguishable because the parties were participating in on-going and productive settlement

8

discussions purportedly justifying the delay in seeking injunctive relief. *Larweth v. Magellan Health, Inc.*, 841 F. App'x 146 (11th Cir. 2021) (affirming district court's conclusion that plaintiff's delay was not unreasonable because the plaintiff sought an injunction after months-long settlement discussions broke down); see also, *Agape*, 2022 WL 18777532, *10 (N.D. Ga. Nov. 2, 2022) (where the parties were negotiating a settlement).

In the instances where the circumstances surrounding the delay are explained, the other authority is distinguishable on different grounds. *Nutra*, 2021 WL 5027800, *14 (N.D. Ga. May 28, 2021) (where delay was due to the on-going COVID-19 pandemic and changes in attorneys); *Ga. Television Co.*, 718 F.Supp. 945 (N.D. Ga. 1989) (where the movant waited to obtain "litigable" proof); *BellSouth Advert. & Publ'g Corp.*, 792 F.Supp. 785 (M.D. Fla. 1991) (where mark holder filed motion for preliminary injunction the same day as alleged infringer filed its declaratory judgment action).

In a transparent effort to draw false parallels between this case and the cited authority, JBN submitted the Declaration of Richard Bartolacci (Doc 37-1, "Bartolacci Decl."). In paragraphs 5 through 8, JBN creates the misimpression that parties were negotiating towards a resolution that would have resolved the claimed harm involving the use of the KRANK3D mark. *Id*. However, Hi-Tech made it clear from the inception of the matter that its use of the KRANK3D mark would

9

continue and it would not entertain JBN's request to cease use. Doc 5-7, Pg 4. Needless to say, if the parties were not negotiating over cessation of use of the mark itself, there is no justification for JBN's delay in seeking a preliminary injunction.

Glaringly, there is nothing in the Bartolacci Declaration to support the conclusion that the parties were ever negotiating on this point, much less that Hi-Tech was ever going to stop using the KRANK3D mark. In fact, the opposite is true. In a response to JBN's cease and desist letter dated August 29, 2023, Hi-Tech emphatically refused to (1) phase out all use of the KRANK3D trademark within 60 days; (2) abandon U.S. Trademark Application Number 97741147; or (3) agree not to use or register the KRANK3D mark or any mark confusingly similar to JBN's KRANK'D® mark for nutrition products or supplements in the future. Doc 5-6, 5-7. Thus, the allegation in the Bartolacci Declaration that it only "became clear in late January of 2024 that Hi-Tech would under no circumstances voluntarily cease its use of the Infringing Mark" is revisionist history in the extreme. Doc 37-1 - Pg 3.

Any party believing it was experiencing irreparable harm in late August with no hope of voluntary compliance would have immediately sought an injunction in early September. Instead, JBN filed an opposition in the USPTO where it knew it could not secure this type of relief. Hi-Tech subsequently reiterated its position by filing the complaint in this matter where it requested declaratory judgement of non-

infringement. Doc 1. In January, 2024, the same timeframe when JBN is claiming it first became aware that Hi-Tech refused to cease using the mark, Hi-Tech confirmed the same consistent position it maintained for the prior six months, i.e., that it was unwilling to discontinue its use of the KRANK3D Mark. Doc 5-7 - Pg 4. Even assuming, arguendo, that any bona fide settlement negotiations even took place, since the negotiations never included Hi-Tech entertaining the idea of ceasing to use the allegedly infringing mark, there is no basis for JBN to delay in seeking relief. Under these circumstances, Hi-Tech is likely to succeed on the merits of its appeal.

### E. JBN Restates The Record And Makes Irrelevant Arguments

The balance of the BA regurgitates, in some cases *verbatim*, rulings in the district court's order and its own Motion for Preliminary Injunction ("Motion"). BA at Pgs. 19-33. Indeed, virtually the entirety of JBN's arguments regarding the similarity between the parties' products, sales methods, customers and advertising methods are airlifted from its original Motion. BA at Pgs. 29-31; *see also* Doc 7-1 - Pg 17-19. All of these arguments led to the district court's erroneous order, were addressed in Hi-Tech's Principal Appeal Brief ("PAB") and therefore will not be restated here. PAB at Pgs. 15-16. JBN also quotes the order claiming that "promotional efforts are contributing factors to determining commercial strength." BA, Pg. 25; *see also* Doc 19 – Pg 11. Hi-Tech's PAB already addressed this

argument asserting that "[a]lthough the product has allegedly been promoted on the open market for many years, "in isolation, evidence of promotion efforts is not sufficient to establish a mark's commercial strength because it tells us precious little about the efficacy of those efforts in creating marketplacerecognition.'" PAB at Pg. 14, citing *Fla. Int'l Univ. Board of Trustees v. Fla. National Univ., Inc.*, 830 F.3d 1242, 1259 (11th Cir. 2016).

## II.   JBN MISCONSTRUES THE SECURITY REQUIREMENT IMPOSED BY FEDERAL RULE OF CIVIL PROCEDURE 65(C)

### A.   JBN's Likelihood of Success on the Merits is Irrelevant

JBN's response brief includes lengthy discussion of findings made in the district court's order granting the preliminary injunction. Doc 42 - Pgs 2-3, 5, 9-11. In particular, JBN focuses on the Court's finding that JBN is likely to succeed on the merits of its infringement claim and contends the Court properly considered JBN's likelihood of success when setting bond. *Id.* at 9-11. Most glaringly, JBN's assertion that its likelihood of success informed the Court's decision respecting bond amount is completely lacking in support. The Order gave no basis or reasoning for setting bond at $5,000.00. Doc 19 - Pg 24.

JBN attempts to support its contention that the strength of its infringement claim warrants a low bond amount by citing one unreported case from the Northern District of Georgia, *Carvel Franchisor SPV LLC v. Chou,* No. 1:19-cv-02194-

12

WMR, 2019 WL 4751866, *1 (N.D. Ga. 2019). This case chiefly relies on an opinion from the Southern District of Florida, *University Books and Videos, Inc. v. Metropolitan Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999). In addition, JBN cites *Eastman Kodak Co. V. Collins Ink Corp.,* 821 F.Supp.2d 582, 590 (W.D.N.Y. 2011) and *TracFone Wireless, Inc. v. Washington,* 978 F.Supp.2d 1225, 1235 (M.D. Fla. 2013). None of these cases involve a situation where, as here, the court did not allow the parties to provide sufficient input regarding an appropriate bond amount and set an egregiously low amount, bearing no relationship to the harm experienced if the injunction issued in error, in direct contradiction of the approach taken in other cases.

JBN also fails to consider that preliminary injunctions may only be issued upon a finding that the movant is likely to succeed on the merits of its underlying claim. If likelihood of success on the merits was also determinative of whether a security bond should be imposed, then a security bond would never be required, and Rule 65(c) would be ineffectual and serve no purpose.

Similarly, JBN relies on the rationale in the Order that any hardship endured by Hi-Tech as a result of the preliminary injunction would result from its own actions.[1] JBN then extrapolates from this reasoning that Hi-Tech should be afforded

---

[1] This finding, and the district court's reasoning that "Hi-Tech had every opportunity to change its behavior when it was alerted of a competing mark, but chose to

no security because any damages it would suffer would be the result of its own actions. JBN's reasoning falls under its own weight since it relies on the assumption that Hi-Tech's use of the trademark is infringing when the entire purpose of the security bond is to provide protection in the event the court's enjoinder of Hi-Tech is deemed wrongful.

### B. JBN Is Incorrect that Failure to Request Bond is, Alone, a Sufficient Basis for Waiving Rule 65(c)'s Bond Requirement

JBN contends Hi-Tech "waived" its entitlement to the security required under Rule 65(c) by "failing" to expressly request it. As an initial matter, this headscratcher of an argument necessarily requires acceptance of the proposition that Hi-Tech can waive the Federal Rules of Civil Procedure under the circumstances and their application is contingent upon specific requests that must have been made.

Under JBN's novel understanding of Rule 65(c)'s application, a district court is "well within its discretion" to waive Rule 65(c)'s bond requirement "based solely on the enjoined party's failure to request a bond." Doc. 42 - Pg 7 (citing *Sisterson Women of Color Reproductive Justice Collective v. Kemp,* 410 F.Supp.3d 1327, 1350 (N.D. Ga. 2019); *HOA Franchising, LLC v. MS Foods, LLC*, No. 1:23-CV-04096-ELR, 2023 WL 9692401, *17 (N.D. Ga. Dec. 20, 2023)). The only authority

---

continue using its infringing mark" decides JBN's infringement claim prematurely. JBN has not prevailed on its infringement claim, and the district court's findings should not be interpreted to preclude any possibility of an eventual finding that enjoinder of Hi-Tech's use of KRANK3D was erroneous.

cited for this proposition is *Sisterson*, which is not supportive, and HOA Franchising– an unreported opinion that relies on *Sisterson*. *Id*.

First and foremost, Hi-Tech did not fail to request a bond. Doc 18. And contrary to what JBN contends, *Sisterson* does not stand for the proposition that a failure to request bond is a sufficient basis for waiving the security requirement. Instead, the opinion identifies multiple reasons for waiving the requirement before concluding, "*[c]onsistent with the foregoing reasons and* in the absence of a request from Defendants, the Court, in the exercise of its discretion, waives the bond requirement set forth in Federal Rule of Civil Procedure 65(c)." *Sisterson,* 410 F.Supp.3d at 1350. Amongst the "foregoing reasons" (ignored by JBN) is a finding that the non-movant would "suffer no injury whatsoever" by imposition of a preliminary injunction which sought to "preserve the status quo of nearly five decades." *Id.* at 1348. Hence, the *Sisterson* court found no costs or damages would be sustained if the non-movant was wrongfully enjoined, rendering inapplicable the requirement of Rule 65(c) that security must be provided in an amount proper to pay the potential costs and damages. Here, in contrast, the district court determined *a bond was appropriate*, but set the amount arbitrarily low, absent consideration of Hi-Tech's potential financial exposure.

Moreover, JBN's assertion that Hi-Tech "failed" to address the bond issue in its Response in Opposition to the Motion for Preliminary Injunction necessarily

implies that JBN's Motion included an argument concerning bond to which Hi-Tech might have responded. Yet, there was no such argument. In addition, it would be natural for parties briefing a motion for preliminary injunction to address the security requirement after the injunction has been granted. Again, this Court has twice previously addressed situations where bond amount was not addressed in briefing motions for preliminary injunction, and in both instances entered a provisional bond pending submission of objections concerning the appropriate amount of bond. *Vineyard Vines,* 2019 WL 8277260 at *8; *Bring It Om,* 2019 WL 9633213 at *4; *see also International Fidelity Insurance Company v. Talbot Construction, Inc.,* No. 1:15-CV-3969-LMM, 2016 WL 8814367, at *10 (N.D. Ga. Apr. 13, 2016) (where briefing on motion for preliminary injunction did not address bond amount, the court required more information to adequately set bond and provisionally set bond at a nominal amount of $5,000, and allowing the parties an opportunity to object to the amount.)

JBN's suggestion that courts typically take the "you snooze, you lose" approach respecting the protections of Rule 65(c) is condescending and simply incorrect. An enjoined party does not waive its entitlement to the security required by Rule 65(c) by failing to expressly request that it be imposed – and JBN's assertion to the contrary is inconsistent with the plain language and spirit of the rule.

Date: July 12, 2024

/s/ Gregory L. Hillyer
Gregory L. Hillyer
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Phone: (202) 686-2884
Fax: (202) 686-2877
Email: ghillyer@hillyerlegal.com

*Counsel for Plaintiff Hi-Tech
Pharmaceuticals, Inc.*

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 3,868 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/* Gregory L. Hillyer
Gregory L. Hillyer

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 12th day of July, 2024, I caused this Reply Brief

to be filed electronically with the Clerk of the Court using the CM/ECF System,

which will send notice of such filing to all registered CM/ECF users.

*/s/* Gregory L. Hillyer
Gregory L. Hillyer
